Spalding, J.
The whole ease is made to turn upon the right to control the river bank, where the boat was originally stationed.
The plaintiffs in error insist that the use was in the town of Wellsville,- by virtue of a dedication made by Wm. Wells, the original proprietor.
If they fail in this, it is conceded that the judgment must stand.
The evidence of dedication is claimed to be as follows:
1. The town plat.
2. The absence of claim, at the sale of lots, to any intervening strip between Water street and the river.
8. The silence and acquiescence of Wells, while wharfs were constructed and improvements were made by the town.
4. The description in the town charter of the corporate lim its as extending “ to low water mark ;” this description having been given by Wells himself, and the charter, granting jurisdiction over the “ wharfs and levys ” to the corporate authorities, being procured on his own petition.
We have examined and deliberately weighed all the facts and circumstances brought under our notice, by the ingenious counsel for plaintiffs in error; but we fail to discover any evidence of an appropriation by Wm. Wells, or of a user by the town of Wellsville, which will warrant us in saying that the locus in quo was not rightfully in the possession of the plaintiff below, when the alleged trespass was committed on his property.
The recorded town plat, so far from establishing a dedication of the premises by the original proprietor, does, in our opinion, most effectually preclude any such supposition.
It describes “ Water street,” which was along the high bank on which the town was laid out, parallel with the river, and overlooking the same, as being “ sixty-six feet in width.” Between the outer line of this street and the water line of the river, down a precipitous bank, is a distance from one hundred and fifty to two hundred feet — and this is the ground said to be dedicated to the town.
*97 The plat does no purport to bound “ Water street” on the river, but on the contrary, when used in connection with the statements of witnesses, has a direct tendency to confine the street to the top of the bank. The diagram attached to the plat, shows this street to be contained within two parallel lines, with the words “width 66 feet” within the open space, and the outer line is represented as being some considerable distance from the line of the river. Here the counsel for plaintiffs in error commit a mistake in point of fact. The location of Water street, in Wellsville, is not represented in the survey as “ extending the whole breadth, from the first tier of lots, on the inner side of said street, to the river;” but it rather comes up to the supposed case made by Mr. Justice McLean, in Barclay et al. v. Howell’s Lessee, cited by counsel from 6 Peters 498. “ There is nothing on the plat,” says the learned Judge, “ which shows any limits to the width of Water street, short of the river on the south. If a line had been drawn along its southern limit, there would have been great force in the argument, that the ground between such limit and the water, was reserved by the proprietors. This would have been the legal consequence from such a survey unless the contrary had been shown.” He is speaking of Water street in Pittsburgh. We find that “ Water street ” in Wellsville, has such a line drawn along its southern or eastern limit upon the map.
The counsel would seek to take advantage of the fact, that in the plat of the town “ Main street is marked as 60 feet wide, and Market street is 66 feet- wide; while the intersection of-these streets represents a greater width, doubtless intended as a market, situated on a street the width of which is specified to be 60 feet.” We have read the description of these streets from the recorded town plat, and find it to be as follows: “ Main street is sixty feet in width, except opposite to lots numbered 43 and 59 — 44 and 60, where it is one hundred feet in width.” This is the appropriation of the ground whereon to set a market house, and the dedication is perfect and complete. But there *98 is no such evidence of an intended dedication as to the ground between “ Water street ” and the river.
It does not appear that Mr. Wells set up a distinct claim ta this ground at the time he sold lots on the north or west side of Water street, and we know of no reason why he could be required or expected to do so. The village was laid out entirely upon a high bluff bank. The broken face of that bank, with the river shore, was not appropriated by the survey and plat. The lots sold on “ Water street,” were all bounded on the south or east by that street limited on the map to sixty-six feet in width. The purchasers of those lots may have paid a higher price, for the reason that they would always have an open front towards the river; but they took by their purchase no right to •control the land of the proprietor on the river.
It is said that Mr. Wells was silent and acquiesced, while wharfs were constructed and improvements made by the town. 'This argument is built on a sandy foundation. The town did indeed construct a wharf, and make a road down the bank to the wharf, but where was the right obtained ?
The evidence shows that in 1888, the town applied to Wm Wells- for a grant of some ground on which to erect a wharf, -and he gave a written authority to the town, to use two hundred feet on the river for that purpose. The same land is now ■claimed to have been dedicated, long before this period, to the use of the town.
The only remaining evidence of dedication is the petition for an act of incorporation, which was signed by Mr. Wells, asking that the limits of the town corporate might extend to low water mark.
The only effect of bringing this ground within the limits of the town corporate would be to subject it to increased taxation. The town charter asked for by Mr. Wells, covered much real estate belonging to that gentleman, and it would be a novel claim to start against him, or his heirs, that it was all dedicated to public use when he put his name to the petition.
*99 The charter, when obtained, provided that the town council might have power “ to regulate wharfs and levys,” but the petitioners are not to be held responsible for the terms of the charter.
There is no evidence which brings home to Mr. Wells any knowledge of such provision until the law was enacted; and if he had knowledge that such a clause was to be placed in the act of incorporation, it is difficult to perceive how his right of property in the soil could be affected thereby.
There may be some technical objection to the particular phraseology used by the judge in giving his instructions to the jury, but, on the whole, we are satisfied that the law was well administered on the trial, and that the judgment of the com' mon pleas should be sustained.

Judgment affirmed.